# CHARLESTON.

LAWSON *et al.* v. POCAHONTAS THIN VEIN COAL LAND CO. *et al.*

Submitted November 18, 1913.   Decided December 2, 1913.

1.  TAXATION—*Assessment—Lands of Cotenant—Forfeiture.*
     An assessment of lands to each of several cotenants as owners, either separately by an acreage equal to his share of the tract, or separately by a fractional part representing each undivided interest, is not a lawful assessment. If so assessed, and any undivided interest is omitted from the land books for a period of five consecutive years, title to the whole tract thereby becomes forfeited, and vests

in the state, notwithstanding entry of and payment of taxes on other undivided interests.   (p. 298).

2.   SAME—*Tax Title—Suit to Cancel—Right to Maintain.*
        A suit to cancel alleged void tax sales and tax deeds, as clouds upon title to land, can not be maintained by those having no present interest in or title to such land, either legal or equitable.   (p. 298).

Appeal from Circuit Court, McDowell County.

Bill by Richard B. Lawson and others against the Pocahontas Thin Vein Coal Land Company and others.   From decree for defendants, complainants appeal.

*Affirmed.*

*J. W. Chapman* and *Wyndham Stokes,* for appellants.

*Anderson, Strother & Hughes,* for appellees.

LYNCH, JUDGE:

Plaintiffs, as the heirs of A. Lawson, seek partition of a tract of 935 acres of land in McDowell county, for which a patent issued by the commonwealth of Virginia in 1861 to Lawson and M. A. Cartright.   The circuit court having dismissed the bill on demurrer, the propriety of its ruling is challenged by appeal.

In 1866 M. A. Cartright conveyed his undivided half interest in the lands to his daughter Barbara, who conveyed the same interest to J. F. Johnson in 1873.   Thence it passed by conveyance to Adonijah Shipe and Daniel Cloud in 1874.   It was sold by the sheriff in 1879 in the name of Shipe as delinquent for the taxes of 1877, and conveyed by the clerk of the county court to D. R. Johnson in 1881, and by the latter to J. D. Sergeant in 1883.

From 1865 to and including 1867, the entire tract of 935 acres was assessed to M. A. Cartright and A. Lawson; and thereafter, to and including 1872, to Barbara Cartright.   In 1873 an acerage equal to a moiety of the whole tract was assessed to Barbara Cartright.   Thereafter, until and including 1880, the same quantity was assessed to Adonijah Shipe. The Lawson undivided half interest did not appear on the land books in any form after 1872 in his name, unless the entries in 1880 of 467.5 acres to Shipe and 467.5 acres to M. A. Cartright and A. Lawson, and the entries in 1881 and

1882 of 467.5 acres to D. R. Johnson and 467.5 acres to M. A. Cartright and A. Lawson, may be said to constitute the entire 935 acres, as perhaps they do. The Lawson undivided interest was sold by the sheriff in 1881 for the taxes of 1880, and in 1882 conveyed by the clerk to D. R. Johnson, who conveyed it to J. D. Sergeant in 1883, when the entire tract of 935 acres appears on the land books in the name of Sergeant.

Plaintiffs, who assert title to the interest of their ancestor, allege the invalidity of the two tax deeds to D. R. Johnson, under which the vendees of Sergeant now claim title to the whole 935 acres, and pray cancellation of both deeds as clouds on their title. Are they entitled to that relief, or to any relief, under the averments of the bill? A negative answer to that question must result in an affirmation of the decree from which they have appealed.

That the whole tract was forfeited to the state, because of non-entry on the land books from 1873 to 1883, a period of ten consecutive years, is clear, in view of the principles announced in *Toothman* v. *Courtney,* 62 W. Va. 167, and more recently in *Caretta Railway Co.* v. *Fisher,* not reported. These cases hold that lands owned by cotenants can not lawfully be assessed to each of them by an acreage equal to his share, or by a fractional part representing his undivided interest; and that, if thus assessed, and any undivided interest is omitted from the land books and not charged with taxes for five successive years, title to the entire tract becomes forfeited, and vests in the state, notwithstanding entry and payment of the taxes assessed may have been made as to other undivided interests therein.

Therefore, by the failure to enter for taxation either the Cartright or Lawson interest and to pay the taxes thereon, for a period of five successive years, the whole 935 acre tract became forfeited, and title thereto vested in the state, notwithstanding the subsequent assessment of and payment of taxes on either interest. But the tax sales under the delinquency proceedings in 1879 and 1881, and the deeds to Johnson pursuant to such proceedings, while not passing the state's title acquired by forfeiture, operate as an estoppel against the state, precluding her from asserting in any manner or for any purpose any title or claim of title hostile or adverse

to that granted by the tax deeds, except of course under a delinquency or forfeiture subsequently occurring, neither of which is averred. *State* v. *Snyder,* 64 W. Va. 659; *State* v. *Lumber Co.,* 64 W. Va. 673; *State* v. *Matthews,* 68 W. Va. 89; *Caretta Railway Co.* v. *Fisher, supra.* The same result obtains, although the tax deeds may be void because of defects in the sale proceedings. *State* v. *Snyder* and other cases last cited, which also hold that such deeds operate, in effect, to pass to the grantee the title of the former owner. Hence, it necessarily follows that plaintiffs, and those under whom they claim, now have no title to the Lawson interest. *McClure* v. *Maitland,* 24 W. Va. 561, 580; *Waggoner* v. *Wolf,* 28 W. Va. 827, 828; *Wiant* v. *Hays,* 38 W. Va. 681. Having neither title legal or equitable nor claim to either they can not maintain this suit for partition, or for redemption of their ancestor's title.

Redemption from forfeiture is a mere grace allowed or withheld by the state, and is available only under proceedings instituted by her under the provisions of law, and not by another. But, as appears from what has been said, she is precluded from instituting any suit for that purpose; and plaintiffs can not do so. The state is estopped by the tax sales and deeds; and the statutes afford no independent redemptive proceedings by plaintiffs. Being without title, and without possession even though they had title, plaintiffs can not maintain this suit. Therefore, the circuit court did not err in its decree of October 25, 1909.

*Affirmed.*