# CHARLESTON.

WILLIAM ELLIS *et al.* *v.* C. F. HAGER *et al.*

Submitted October 19, 1920.   Decided October 26, 1920.

1.   TAXATION—*Limitation of Action for Relief from Tax Sale for Debt Confined to Sales to Individuals, and Not to the State.*
     The provisions of section 27, chapter 31, Code 1918, authorizing one whose real estate has been sold improperly for al-

87 W. Va.

leged. nonpayment of taxes assessed against it, which in fact had been paid, to set aside and annul such sale and the deed thereon based, by proper proceeding instituted "within five years after the deed shall have been obtained and admitted to record," and limiting to such period of time his right to question the validity of such sale and deed, primarily relate to ordinary tax sales, where the land sold is purchased by individuals and not by the state. (p. 316).

2. SAME—*Limitation of Remedy of Owner, Where State Has Purchased at Improper Sale for Taxes, Governed by Code, 1918, c. 105.*

Where at such tax sale the state becomes the purchaser of the real estate thus improperly sold, there is no limitation, other than chapter 105, Code 1918, imposes in proceedings to sell such land for the benefit of the school fund, upon the right of the owner, his heirs or assigns, by a proper proceeding, to establish the fact of such payment and set aside and annul such sale. The equitable defense of laches has no application in such case. (p. 318).

3. SAME—*Decree for Sale for Non-payment of Taxes Precludes Assertion of Actual Payment.*

Where the former owner of such real estate and other claimants of title to or interest in it are made formal parties to a suit instituted by the commissioner of school lands for the sale thereof, but fail to assert their claim to annul and set aside the prior sale to the state, the final decree entered in such cause is binding upon them and others in privity with them, and precludes later assertion by them of such actual payment. (p. 319).

4. SAME—*Known Claimants, Not Made Parties, Are Not Bound by Final Decree.*

But if such persons were "known claimants," within the meaning of section 6, chapter 105, Code 1918, and should have been, but were not, made parties to the proceeding, and did not voluntarily become such parties by petition, the final decree is not binding as to them, and the entire proceeding and sale thereunder, together with subsequent deeds based thereon, may be set aside at their suit. (p. 319).

5. SAME—*Curative Statute Held Retroactive, and Not Prospective.*

Such want of jurisdiction to make the sale is not cured by section 19, chapter 105, Code 1918 (chapter 42, Acts 1905), where the sale was made and decree confirming it entered sub-

sequent to the date on which the statute became effective; the curative effect of that statute being retroactive, not prospective. (p. 319).

6. APPEAL AND ERROR—*Cause Remanded for Further Proceedings Where Decisive Evidence Might be Produced.*

When the record of a chancery cause discloses lack of development of the merits of vital issues and strong probability of the existence of evidence decisive thereof, this court will reverse the decree and remand the cause for further proceedings to be had therein. (p. 320).

(WILLIAMS, PRESIDENT, absent).

Appeal from Circuit Court, Mingo County.

Suit by William Ellis and others against C. F. Hager and others. Decree for defendants, dismissing the bill on final hearing, and plaintiffs appeal.

*Reversed and remanded.*

*Whitt & Shannon,* for appellants.
*Stafford & Rhodes,* for appellees.

LYNCH, JUDGE:

The bill dismissed upon final hearing upon the pleadings, without proof except such as the exhibits themselves furnished, sought a decree to cancel and annul two tax deeds, one dated November 4, 1905, the other February 6, 1913, and general relief. The land affected by the tax delinquency consisted of a tract of approximately 90 acres situate in Mingo County on Mare Branch, a tributary of Cane Patch Fork of Twelve Pole Creek. This tract Mary Vance by deed of May 3, 1879, conveyed to William R. Ellis and Martha Ellis, his wife. Plaintiffs are the children and heirs at law of the grantees. Defendants Chloe Ellis and C. F. Hager are the holders of the tax titles sought to be set aside, and defendant Louverna Hager is the wife of defendant C. F. Hager and sister of the plaintiffs and therefore one of the heirs at law of William R. and Martha Ellis.

The pleadings and exhibits filed in the cause disclose substantially these facts: In 1887 the 90-acre tract was returned delinquent for alleged nonpayment of the taxes assessed against it for that year, sold by the sheriff and purchased by the state,

At the July, 1901, term of the circuit court of Mingo County Wallace Chafin, commissioner of school lands for that county, instituted proceedings to sell the tract, and pursuant to authority later conferred by the court he sold the land to A. C. Pinson, July 20, 1905, which sale was confirmed the day following, and by direction of the purchaser, Chafin together with Pinson and his wife executed a deed, dated November 4, 1905, conveying the property to defendant Chloe Ellis. The record does not disclose what relationship she bears to plaintiffs. In 1909 the land was returned delinquent in her name for the nonpayment of taxes for that year and sold December, 1911, to defendant C. F. Hager for the sum of $12.56, representing the aggregate amount of delinquent taxes, with interest thereon, commissions and expenses of the sale. There is filed as an exhibit in the cause a list of the real estate sold in December, 1911, for delinquency occurring in 1909, which shows that the land sold to C. F. Hager was "redeemed June 1 (?), 1912," within less than one year after its sale. But apparently ignoring the redemption, if any in fact occurred, the clerk of the county court of Mingo County on February 6, 1913, executed to defendant Hager a deed conveying the tract in question. For the purpose of setting aside this deed and that of 1905 to Chloe Ellis this proceeding was instituted by plaintiffs August 2, 1916.

As grounds for setting aside these deeds plaintiffs rely upon the fact that the taxes for the year 1887, for the alleged nonpayment of which the land was returned delinquent, sold and purchased by the state, were in fact paid by them, and to support their contention in this respect they file as an exhibit a tax receipt for that year signed by the proper officer. Defendant Hager rests his defense not alone upon the proceedings based upon the alleged delinquency of 1887, but also upon a deed from Martha Ellis, dated March 10, 1898, which purports to convey to him the 90 acres in question. In this connection, however, and before considering plaintiffs' right at this late date to assail the alleged improper delinquency of 1887 and sale thereunder to the state, even if it be assumed that that transaction and the deeds based thereon were void and the deed of 1898 valid, yet the latter deed conveyed to defendant Hager only the undivided

one-half interest owned by Martha Ellis in the land, for the other undivided half interest then was owned by the plaintiffs as heirs at law of William R. Ellis, her husband, who died shortly after the conveyance of the tract to him and his wife in 1879.

It is first necessary to consider whether plaintiffs are too late in their assertion of and reliance upon the actual payment of the taxes assessed against the property for the year 1887, as to which the alleged delinquency arose, followed by sale and purchase on behalf of the state. Section 27, ch. 31, Code 1918, provides: "If the owner of any real estate sold for the nonpayment of the taxes thereon, his heirs or assigns, claim that the taxes on account of which the sale was made were not in arrears, he may, within five years after the deed shall have been obtained and admitted to record, institute a suit in equity against the purchaser, his heirs or assigns, alleging the payment of the taxes, and seeking to have the sale and deed declared void; or he may within such time, in any suit or action pending relative to the real estate in which the payment is not alleged, give to the purchaser, his heirs or assigns, parties thereto, notice in writing of his purpose to prove the fact of such payment, or file such notice in the case at least thirty days before the trial or hearing thereof; and having done so, may in such suit or action prove that such taxes were paid. But unless he shall, within said five years, institute such suit, or give or file such notice in a suit or action pending relative to such real estate, he shall not prove such fact, or on such account in any way question the validity of the sale or deed."

The five year period of limitation thus prescribed does not begin to run until the purchaser's deed for the property "shall have been obtained and admitted to record." Where the state is purchaser, as here, no deed is made conveying to it the delinquent property. The owner's right, title and interest vest in the state by virtue of the sale and purchase on its behalf, "without any deed or other conveyance therefor to the state." Section 32, ch. 31, Code 1918; *Neal* v. *Wilson,* 79 W. Va. 428. Hence in a purchase by the state of property sold for nonpayment of taxes the event prescribed by statute as the initial or starting point for the period of limitation does not occur. There

is nothing to set the limitation statute in motion. By necessary implication, therefore, section 27 relates primarily, if not wholly, to ordinary tax sales and purchases by individuals other than the state. Hence it would seem that there is no limitation, other than chapter 105 imposes in proceedings to sell such land for the benefit of the school fund, upon the right of one, whose land has been sold for taxes actually paid and purchased on behalf of the state, to set aside and annul such sale by proper proceedings and proof. The equitable defense of laches has no application in such case. *Cook* v. *Lasher,* 73 Fed. 701. Nor does the one year limitation period imposed by section 33, ch. 31, Code 1918, apply. It relates only to cases where the owner of real estate, on which taxes have not in fact been paid, seeks to redeem it from the state on whose behalf it was purchased at the tax sale. Here the redemption sought is not for the purpose of belated payment of taxes which should have been, but were not, paid, but for the purpose of setting aside and annulling a sale that never should have been made, for the reason that the taxes for which it was sold had properly been paid. Clearly, therefore, section 33 does not apply to the kind of case with which we are dealing.

The inapplicability of sections 27 and 33 to purchases on behalf of the state does not necessarily imply or justify unlimited right to assert and establish the fact of actual payment of the taxes on the real estate sold. Indeed, by the provisions of chapter 105, Code 1918, authorizing and prescribing the procedure for sales by the commissioner of school lands, there is apparent an attempt on the part of the Legislature to give to such sales a degree of finality consistent with due process of law. By the first section of that chapter lands purchased by or forfeited to the state, as well as those acquired by it in other ways, are subject to sale for the benefit of the state school fund. According to section 6, the owner of the land and all known claimants of title to or interest in it must be made parties defendant in the proceeding, and any one so interested who is not so made a party therein may by petition become a party thereto. By section 17, the former owner, his heirs, devisees or assigns of such real estate, may redeem it, so far

as title thereto remains in the state, at any time during the pendency of the suit for the sale thereof, and before a decree of confirmation has been entered by the court, by filing the petition, introducing the proof and paying the taxes and costs therein specified. Likewise, by section 16 he may, within one year after confirmation, file his petition in the court that decreed the sale and recover the excess of the purchase money derived from the sale of his land over and above the amount to which the state is entitled for taxes, interest and costs; and if all these had in fact been paid and the proceeding was a mistaken one, then doubtless to the entire sum received by the state. And section 20 constitutes the final decree entered in any such suit "a bar to the claim of every person to the real estate, or any part of it, or lien thereon, or to the proceeds thereof, who has failed to appear and present his claim thereto as is provided in the sixth section of this chapter," with certain exceptions not material at this stage of the case.

Whether plaintiffs and their mother, Martha Ellis, were made parties to the school land commissioner's proceeding to sell the tract does not appear from the record. The former as heirs at law of William R. Ellis, owner of one undivided half interest in the land, and the latter as owner of the other, probably were known claimants within the meaning of section 6, ch. 105, Code 1918, and should have been made parties to the suit. *Neal* v. *Wilson,* 79 W. Va. 482. If they were made parties and did not then assert their claim to annul and set aside the prior sale to the state, the final decree is a bar to this proceeding, for section 20, above referred to, prescribes its binding effect. On the other hand, if they should have been, but were not in any form, made parties to the proceeding, and did not voluntarily become such parties by petition, the final decree is not binding as to them (*Blake* v. *O'Neal,* 63 W. Va. 483, pt. 9, Syl; *Neal* v. *Wilson, supra*), and the entire proceeding and sale thereunder, together with subsequent deeds based thereon, may be set aside at their suit.

It may be urged that even if these claimants were not made parties, yet such want of jurisdiction to make the sale is cured by section 19, ch. 105, Code 1918, as construed in *State* v.

*Mathews,* 68 W. Va. 89, and *McGraw* v. *Rohrbough,* 74 W. Va. 285. The curative effect of that statute, however, is retro-active, not prospective, and does not cure such errors occurring after the date of its enactment. *Neal* v. *Wilson,* 79 W. Va. 482, 488-9. The statute referred to (chapter 42, Acts 1905) was enacted February 23, 1905, and became effective 90 days after its passage. Though the proceeding to sell this tract for the benefit of the school fund was instituted prior to that date, the sale thereunder and the decree confirming it were not made till July 20th and 21st, respectively. Hence the curative pro-vision of that act does not operate to cure the error here com-plained of. *Neal* v. *Wilson, supra.*

On all these questions the record is very unsatisfactory. No proof was taken. Much documentary evidence that should have been filed as exhibits or otherwise brought to the atten-tion of the court was not filed; and the condition of the cause is such that we do not feel justified in passing finally upon these questions at this time. Nor shall we now discuss the effect of the deed of 1898, executed after the sale to the state but before the commissioner's suit and sale to Chloe Ellis, by which Martha Ellis purported to convey the 90-acre tract to defend-ant Hager. As said above, even assuming that she had the right at that time to make the deed, she thereby conveyed to Hager only her undivided one-half interest in the land. The other half interest was owned by plaintiffs and Louverna Hager as heirs at law of William R. Ellis.

Likewise we shall not now consider what effect the possession of Chloe Ellis under the tax deed of 1905, assuming it to be void, and of Hager under the deed of 1913, if continued for the statutory period, would have on plaintiffs' rights. No proof discloses who was in possession of the tract during these years, or by whom the taxes were paid. Nor shall we discuss the effect of the purported redemption of June 7, 1912, prior to the date of the deed to Hager, or whether his purchase, as husband of a cotenant with plaintiffs, constituted a redemption of the tract in their favor within the rule announced in *Abbott* v. *Williams,* 74 W. Va. 652, and *Cline* v. *Bailey,* 85 W. Va. 139, 101 S. E. 171. All these circumstances are clouded in

such doubt and uncertainty that we do not feel competent at this time, with the record in such a shape, to express an intelligent opinion upon such questions. That proof exists to establish definitely these disputed facts we feel certain, and in conformity with the rule laid down in *Cook* v. *Lumber Co.*, 74 W. Va. 503; *LaBelle Iron Works* v. *Savings Bank*, 74 W. Va. 569; *Wildell Lbr. Co.* v. *Turk*, 75 W. Va. 26; and *Harrison* v. *Harman*, 85 W. Va. 538, 102 S. E. 224, we decline to review the decree upon its merits, but will reverse it solely because prematurely entered, and remand the cause for further proceedings.

*Reversed and remanded.*